David R. Nepom
Attorney at Law
20495 S. Sweetbriar Rd.
West Linn, OR 97068
Telephone:  (503) 223-1137
Fax:  (503) 223-3511
Email: dnepom@gmail.com
Oregon State Bar No. 80467
        Attorney for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| NRC ENVIRONMENTAL SERVICES INC, a Washington Corporation, <br><br> Plaintiff, <br> v. <br><br> BARNARDS HOLDINGS, INC., fka WATER TRUCK SERVICE, INC., an Oregon corporation and BOB JONAS, an individual. <br> Defendants. <br> _____ | ) ) ) ) ) ) ) ) ) ) ) ) Case No. 3:19-CV-01133-JR <br><br> **DEFENDANTS' ANSWER TO THE FIRST AMENDED COMPLAINT AND COUNTERCLAIMS** |

Defendants Barnards Holdings, Inc., fka Water Truck Service, Inc. and Bob Jonas

files their Answer to Plaintiff's NRC Environmental Services, Inc's First Amended Complaint and

Counterclaims, and admits, denies and alleges as follows:

 PAGE 1 - DEFENDANTS'  ANSWER TO PLAINTIFF'S FIRST AMENDED COMPLAINT
AND COUNTERCLAIMS

David R. Nepom
Attorney at Law
OSB 80-467
20495 S. Sweetbriar Rd.
West Linn, OR  97068
Email:  Dnepom@gmail.com
Tel (503) 223-1137    Fax (503) 223-3511

PARTIES

1.  Defendants admit paragraph 1.  Defendants shall also refer occasionally herein to plaintiff as "NRC".

2.  Defendant admits paragraph 2.  Defendants shall also occasionally refer to Barnards Holdings herein as "Water Truck" or "WTS".

3.  Defendants admit paragraph 3, except as follows:  Defendant Bob Jonas was domiciled in the State of Oregon at the time of the transaction with NRC, but is now domiciled in the State of Nevada.  In terms of the terms of the indemnity agreement included in the contract, the terms of the contract speak for themselves.

JURISDICTION AND VENUE

4.  Defendants admit paragraph 4.

5.  Defendants admits paragraph 5.

6.  Defendants admit paragraph 6.

7.  Defendants admits Exhibit 1 is a copy of the Asset Purchase Agreement ("Agreement") between the parties, and admits there are certain disputes between the parties, including those referenced in the Complaint and this Answer and the  Counterclaims.  A lease between Defendant Jonas as Lessor and Plaintiff as Lessee was also executed at the same time for a portion of the Clutter Road Property, referenced as the "Clutter Facility" lease or "Clutter Lease".

8.  Defendants admit paragraph 8.

9.  Defendants admit that NRC purchased some of the assets of Water Truck and Stormwater Recycling (including some of the equipment used in the operation of the business),

PAGE 2 - DEFENDANTS'  ANSWER TO PLAINTIFF'S FIRST AMENDED COMPLAINT AND COUNTERCLAIMS

David R. Nepom
Attorney at Law
OSB 80-467
20495 S. Sweetbriar Rd.
West Linn, OR  97068
Email:  Dnepom@gmail.com
Tel (503) 223-1137    Fax (503) 223-3511

and entered into an assignment of the premises lease at the Killingsworth Facility and that Plaintiff leased a portion of the premises from Defendant Jonas for a portion of the Clutter Facility.   Defendants further admit that liquid wastewater disposal occurred at the Killingsworth Facility, which wastewater was disposed of into the City of Portland Bureau of Environmental Services' sewer, and that some other activities, including some off-loading of street sweeping debris and wastewater pretreatment were performed at the Clutter Facility.

10.  Defendants admit paragraph 10.

11.  Defendants admit paragraph 11.

12.   Defendants admit paragraph 12.

13.  Defendants state that the Agreement speaks for itself, but generally the provisions included in paragraph 13 are included in the Agreement.

14.  Defendants state that the Agreement speaks for itself, but admit that certain representations and warranties are included in the Agreement,partially quoted or referenced in paragraph 14..

15.  Defendants state that the Agreement speaks for itself, but admit that certain representations and warranties are included in the Agreement, which are partially repeated in paragraph 15.

16.  Defendants state that the Agreement speaks for itself, but admit that certain representations and warranties are included in the Agreement, which are partially repeated in paragraph 16.

17.  Defendants state that the Agreement speaks for itself, but admit that certain representations and warranties are included in the Agreement, which are partially repeated in

David R. Nepom
Attorney at Law
OSB 80-467
20495 S. Sweetbriar Rd.
West Linn, OR  97068
Email:  Dnepom@gmail.com
Tel (503) 223-1137    Fax (503) 223-3511

paragraph 17.

18.   Defendants state that the Agreement speaks for itself, but admit that certain representations and warranties are included in the Agreement, which are partially repeated in paragraph 18.

19.   Defendants deny that there were any deficiencies in the permitted use of the operations at the Killingsworth and Clutter Facilities as operated by Defendants; Defendants acknowledge that some time after the sale of the business assets included in the Sales Agreement to Plaintiff, Plaintiff changed the operations at Clutter and Killingsworth, and some of the changes made by Plaintiff caused problems with Plaintiff's operations at Clutter, including the problem that Plaintiff's new operations were not properly permitted or licensed.

20.   Defendants admit that the Killingsworth Facility was used as and for a Wastewater Discharge facility, and, to Defendants' limited information and belief, that NRC is currently using the site for the same purposes.  Defendants know that Plaintiff modified Defendants' operations at the Killingsworth Facility, but do not know the extent of such modifications, and the extent to which such modifications effected Plaintiff's permits; it is known that Plaintiff's revised operations generated a strong odor smelling of sewage, which implies that Plaintiff began accepting different waste which Defendant had not accepted at the Killingsworth site from 2012 through the date of the business sale, which waste would be outside the scope of the Killingsworth activities Defendant WTS conducted at the Killingsworth facility at the time of the sale of the business assets to Plaintiff.

21.   Defendants admit that Defendants believe that it had the right to discharge wastewater under its permit with the Bureau of Environmental Services (City of Portland)

PAGE 4 - DEFENDANTS'  ANSWER TO PLAINTIFF'S FIRST AMENDED COMPLAINT AND COUNTERCLAIMS

David R. Nepom
Attorney at Law
OSB 80-467
20495 S. Sweetbriar Rd.
West Linn, OR  97068
Email:  Dnepom@gmail.com
Tel (503) 223-1137    Fax (503) 223-3511

("CBES") when it discharged wastewater at the Killingsworth facility; Defendants deny that there was any understanding by either Plaintiff or Defendants that the Defendant's CBES permit was transferable to Plaintiff.

22.    Defendants deny paragraph 22; prior to the Plaintiff's purchase of WTS, during Plaintiff's "due diligence" investigation into some of Defendant's business and operations, Plaintiff met with the CBES and was specifically advised that the Defendants' CBES permit was not transferable, and that Plaintiff would need to obtain a new CBES permit for the Killingsworth facility. Defendant offered to permit Plaintiff to purchase its corporate stock, to facility the use by Plaintiff of Defendant's permit, but Plaintiff elected to complete an "asset purchase", even though the CBES permit was non-transferable.

23.    Defendants admit that Plaintiff submitted a new discharge permit application to CBES to use the Killingsworth facility, which permit was issued to Plaintiff in due course, permitting Plaintiff to use the Killingsworth facility for the discharge of liquid waste consistent with Defendant WTS' operations at the Killingsworth facility prior to the sale of the business assets purchased by Plaintiff.

24.    Defendants are aware that Plaintiff elected to modify the Killingsworth facility and to seek some sort of modification of its CBES permit some time after Plaintiff purchased some of Defendant's business assets; Defendants are not aware of the extent to which, or the manner in which, Plaintiff sought a modification of the operations at the Killingsworth facility. Defendants do not know what new equipment was proposed, or how that modified the prior permit (including how that permit was different than the permit that had previously been issued to Plaintiff) that permitted continued use of the Killingsworth facility for the discharge of

PAGE 5 - DEFENDANTS' ANSWER TO PLAINTIFF'S FIRST AMENDED COMPLAINT AND COUNTERCLAIMS

David R. Nepom
Attorney at Law
OSB 80-467
20495 S. Sweetbriar Rd.
West Linn, OR  97068
Email:  Dnepom@gmail.com
Tel (503) 223-1137    Fax (503) 223-3511

liquid waste.   Defendants are without information or belief to know what CBES informed Plaintiff about its proposed new equipment and new operations.

      25.   In response to paragraph 25, Defendants are without information or belief to know what plaintiff did with the City of Portland Bureau of Developmental Services (CBDS), all of which apparently occurred after or as a part of Plaintiff's changes in the operations of the Killingsworth facility, long after Plaintiff had purchased the business assets  and after Plaintiff had obtained the first CBES wastewater discharge permit, permitting continued operations in the manner that Defendant had conducted activities at the site from 2012 through the date of sale.

      26.   Defendants repeat the response to paragraph 25 as to paragraph 26.

      27.   Defendants admit that when WTS was initially processing solid waste at the Killingsworth Facility in 2010 and 2011 (waste from septic systems and porta potties) and that it met with the City of Portland and considered applying for a Conditional Use Permit; however, Defendants elected not to process solid waste at the Killingsworth Facility at said time, and stopped taking any septic system or porta potty wastes, and did not continue any such waste processing at the Killingsworth facility, instead only using the Killingsworth Facility for the discharge of liquid waste (and treating said liquid waste at the wastewater pre-treatment facility at Clutter Road), and limiting the operations at Killingsworth solely for the discharge of liquid waste under its CBES permit, and not processing solid waste or generating any residual solid waste at the Killingsworth Facility.  Thereafter; Defendant WTS renewed the same CBES permit in 2015, and continued said operations, and a similar permit was then issued to Plaintiff following the Plaintiff's purchase of the business assets, prior to Plaintiff modifying the operations at the Killingsworth Facility.

PAGE 6 - DEFENDANTS'  ANSWER TO PLAINTIFF'S FIRST AMENDED COMPLAINT AND COUNTERCLAIMS

David R. Nepom
Attorney at Law
OSB 80-467
20495 S. Sweetbriar Rd.
West Linn, OR  97068
Email:  Dnepom@gmail.com
Tel (503) 223-1137    Fax (503) 223-3511

28.   Defendants admit that in 2011 defendants elected to cease accepting any septic system and porta potty waste, and ceased operations in processing any such waste, and elected not to attempt to process solid waste at the Killingsworth facility, thereby making any need to proceed with the land use process for getting a permit for the  processing of such waste at the Killingsworth facility unnecessary for the facility.  No revenues from the processing of any such solid waste were shown on any of the income records reviewed by Plaintiff in their decision to purchase some of Defendant's business assets, and no representation was ever made and Plaintiff did not believe that the processing of such waste was part of Defendants' business or operations at any time relevant to Plaintiff's purchase of some of the Defendant's business assets. The only operations and revenues Plaintiff received related to the Killingsworth Facility at the time of the sale (and during the time in which Plaintiff was interested in reviewing Defendant's operations for purposes of considering the purchase of portions of Defendants' business assets) related to the discharge of wastewater pursuant to the CBES permit which Defendant operated under, and a nearly identical CBES permit was subsequently issued to Plaintiff after the business sale, and did not relate to any processing of solid waste at the Killingsworth facility (such as the acceptance of porta potty and septic waste at the Killingsworth facility, which operations ceased in approximately 2011.)

29.   The terms upon which a Conditional Use Permit might have been issued in 2011, referenced in paragraph 29, were a reference with regard to the solid waste treatment operations that  had  begun in 2010, but which were terminated in approximately 2011, at which time Defendant WTS agreed not to process waste at the Killingsworth facility and WTS agreed not to generate any residual solid waste at the Killingsworth facility.

PAGE 7 - DEFENDANTS'  ANSWER TO PLAINTIFF'S FIRST AMENDED COMPLAINT AND COUNTERCLAIMS

David R. Nepom
Attorney at Law
OSB 80-467
20495 S. Sweetbriar Rd.
West Linn, OR  97068
Email:  Dnepom@gmail.com
Tel (503) 223-1137   Fax (503) 223-3511

30.    Defendants are unaware of what changes Plaintiff made to the Killingsworth facility after the sale, and what changes in the operations at the Killingsworth facility operations were proposed and/or adopted, and whether such changes in operations and the processing of materials at the Killingsworth facility would require a change in permitting that Plaintiff would need for the Killingsworth facility; however, it is known the Plaintiff had previously been granted the equivalent CBES wastewater discharge permit that Defendants were granted in 2010 and subsequently renewed in 2015, which permitted Plaintiff to discharge wastewater at the Killingsworth Facility in the same manner that had occurred during Plaintiff's operations (subsequent to Defendants' decision not to accept porta potty and sewage waste or generate residual solid waste at the Killingsworth facility).  As described below, Defendants are aware that some time after Plaintiff took over the Killingsworth site that there were complaints of a strong sewage smell coming from the site, which implies Plaintiff began accepting sewage waste.

31.    In answer to paragraph 31, the requirements of the 2011 consideration of the issuance of a Conditional Use permit was not relevant to the limited wastewater discharge activities conducted under the CBES permit which were in effect at the time of the sale of the business assets to Plaintiff, when Defendant agreed not to process solid waste or generate residual solid waste at the Killingsworth facility.

32.    Defendants repeat the response to paragraph 31 as to paragraph 32.

33.    Defendants deny the relevance of the 2011 consideration of the issuance of a Conditional Use permit to the operations that existed at the time of the sale, and deny any material misrepresentations or omissions related thereto, and deny any obligation to disclose any such matters.  Further Plaintiff met with the City of Portland and CBES prior to the purchase of

David R. Nepom
Attorney at Law
OSB 80-467
20495 S. Sweetbriar Rd.
West Linn, OR  97068
Email:  Dnepom@gmail.com
Tel (503) 223-1137    Fax (503) 223-3511

the business assets and met with the City to determine what process it would need to undertake to continue operations at the Killingsworth Facility; Defendant was present at one of such meetings.  The information provided by the City to Plaintiff, stated at a meeting with Defendant present, did not require a Conditional Use Permit for continuing Defendant's wastewater discharge activities.

   34. Defendants believe that the Defendant WTS's wastewater discharge operations were permitted at the Killingsworth facility (so long as WTS did not accept or process solid wastes at the facility or generate residual solid waste on site), and that the City of Portland has continually given Defendant a permit for such discharge (and renewed that permit and then subsequently given Plaintiff a similar permit) and that if the City imposed new conditions for the operations at Killingsworth Facility due to policy changes implemented by the City, the prior activities should be "grandfathered in" or subject to change only upon the renewal of the CBES permit.  Defendants have no knowledge of the specific changes Plaintiff has made or proposed to be made at the Killingsworth Facility or the operations at the facility, but Defendants are aware that any changes in operations or facilities could, of course, trigger new requirements or changes to the permitting process, and Defendants do not know if the City elected to apply new conditions or terms on Plaintiff due to policy changes by the City or as a result of the modified operations proposed or conducted by Plaintiff, after Plaintiff changed its operations or when Plaintiff applied for a new permit for its modified operations at the Killingsworth Facility.

   35. Defendants deny paragraph 35, Defendants understood the need for the land use review was caused by the processing of porta potty and septage waste at the Killingsworth facility, and that the Defendants' agreement with the City in 2011 to terminate the  acceptance of

PAGE 9 - DEFENDANTS'  ANSWER TO PLAINTIFF'S FIRST AMENDED COMPLAINT AND COUNTERCLAIMS

David R. Nepom
Attorney at Law
OSB 80-467
20495 S. Sweetbriar Rd.
West Linn, OR  97068
Email:  Dnepom@gmail.com
Tel (503) 223-1137    Fax (503) 223-3511

porta potty waste or septage and not to process solid waste and not to create solid waste avoided

the need to proceed with the land use review, since the City's issuance and Defendants'

operations under the CBES wastewater discharge permit was allowed to continue at the

Killingsworth facility for the years that followed.

      36.  Defendants deny paragraph 36.

      37.  The Clutter Facility had previously been used by the Defendant's for the off-

loading of street sweeper debris, which was then re-loaded within a short time for transport to

other facilities for processing or disposal.  The Clutter Facility was outside the Metro (Tri

County Metropolitan District) boundary and did not need a re-load permit for such operations.

Initially after Plaintiff began operations at the Clutter Facility, Plaintiff took said sweeper debris

and re-loaded them for transport to other locations for processing or disposal; however, at a later

time, without the permission of the Defendant Bob Jonas, the landlord of the Clutter premises,

and without obtaining the necessary permits for such operations, Plaintiff elected to attempt to

process and store the sweeper debris at the Clutter Facility, permitting piles (or "little

mountains") of debris to grow on site, and allowing composting of the materials on site, all of

which debris processing and accumulated required new permits from the  Oregon DEQ, which

were not required when the facility was used as a "re-load" facility.  Plaintiff admitted to the

DEQ that it elected to begin processing of waste at the Clutter Facility "to save money."

Plaintiff permitted the processed waste to begin decomposition and to otherwise cause odor and

did not make arrangements to handle leachate and permitted polluted water to run off the stored

materials, and had other problems due to the improper processing of these materials at the

Clutter Facility once Plaintiff elected to process the materials at the Clutter facility rather than re-

David R. Nepom
Attorney at Law
OSB 80-467
20495 S. Sweetbriar Rd.
West Linn, OR  97068
Email:  Dnepom@gmail.com
Tel (503) 223-1137    Fax (503) 223-3511

load them for prompt transport to proper processing facilities.  Defendants deny that it used the Clutter Facility for the same solid waste processing of the street sweeping debris that Plaintiff began utilizing after the sale.  Plaintiff NRC also began to dispose of some of the processed debris by trucking said debris (or having said debris trucked) under false or incomplete documentation to a location not licensed for acceptance of such debris.  Defendants did not use the site for the same purposes.

     38.    Defendants understand, based on information and belief, that the DEQ notified Plaintiff that a neighbor had complained about odor at the Clutter facility, and that Plaintiff's processing of solid wastes including the separation of the organic and inorganic wastes at the Clutter facility and accumulation of the waste at said site, and the composting of debris at the site required additional permits.  The DEQ has stated in internal emails that the mere re-loading of materials at the facility probably does not require a transfer station permit, and that a permit is needed only if a facility has a problem such as they are dealing with food debris or stinky materials, and that Plaintiff now needed a new permit because it was accumulating street sweeping debris.  Except as stated, Defendants deny paragraph 38.

     39.    Defendant Jonas, as landlord, does not want Plaintiff producing "stinky waste" at its Clutter Facility (which also houses other tenants), and never represented that the Clutter Facility would be a property that could be permitted for a solid waste or transfer station permit, nor was the premises leased to Plaintiff as a solid waste or transfer station location; however, Defendant Jonas cooperated with Plaintiff, at Plaintiff's request, to permit Plaintiff to seek a  temporary reprieve from the DEQ's immediate closure of Plaintiff's operations at the Clutter Facility.  Defendants had no obligation to inform Plaintiff that Plaintiff could not operate

PAGE 11 - DEFENDANTS'  ANSWER TO PLAINTIFF'S FIRST AMENDED COMPLAINT
AND COUNTERCLAIMS

David R. Nepom
Attorney at Law
OSB 80-467
20495 S. Sweetbriar Rd.
West Linn, OR  97068
Email:  Dnepom@gmail.com
Tel (503) 223-1137    Fax (503) 223-3511

a solid waste or transfer station operation at the Clutter facility since no such operation similar to Plaintiff's new processing of the street sweeping debris at the facility had previously been conducted nor planned by Defendants at the Clutter facility.  Defendants had previously transported such street sweeping debris to landfills or other locations, including a separate composting location which Defendant had in Dayton, Oregon (which facility was made available for potential purchase by Plaintiff, but which facility was a location which Plaintiff did not want to purchase from Defendants.)

40.  The allegations in paragraph 40 are irrelevant to this matter, since any additional approvals or permits for the Clutter Facility were the result of changes Plaintiff made in the operations at the Clutter Facility after the business asset purchase (apparently made without review of what additional permitting would be required) and without seeking the consent of the landlord (Defendant Jonas) to the proposed new activities at the rented property.  Any requirement for additional permits were only necessary due to changes in operations begun by Plaintiff "to save money" rather than continuing the previous business operation of re-loading the debris and transporting the debris to other locations for disposal or processing.

41.  Paragraph 41 is irrelevant to any obligation or obligations of the Defendants.

43.  Defendants admit paragraph 43.

44.  Defendants deny.  See counterclaims below.  Defendants specifically contend that Plaintiff has not performed its obligations, and all conditions precedent to be performed on its part, in that it:  1) has failed to pay certain sums to Defendant, 2)  has failed to adequately keep records of receipt of Defendant WTS's accounts receivable and other sums received by Plaintiff rightfully belonging to Defendants; 3) failed to fulfill its obligations under the Clutter

PAGE 12 - DEFENDANTS'  ANSWER TO PLAINTIFF'S FIRST AMENDED COMPLAINT AND COUNTERCLAIMS

David R. Nepom
Attorney at Law
OSB 80-467
20495 S. Sweetbriar Rd.
West Linn, OR  97068
Email:  Dnepom@gmail.com
Tel (503) 223-1137    Fax (503) 223-3511

lease, including the provisions regarding Plaintiff's use of the premises in compliance with all laws and other provisions of said Lease.   Defendants further contend that  4) Plaintiffs did not give the requisite notices, in the manner and within the time periods provided for in the contract, for pursuing a claim of indemnity for a claim for an alleged breach of the Sellers' warranty and representation provisions of the contract, all as more particularly addressed below, including at paragraph 72.

45.   Defendants admit the contract, as stated above, and state the contract speaks for itself; Plaintiff's statements of "the law" are  limited, incomplete statements of the law. Defendants deny making misrepresentations or omissions of material facts which they were obligated to disclose.  Defendants deny the rest and remainder of paragraphs 45 through 72, and incorporates by reference the answers and affirmative defenses set out elsewhere herein.

48.  Defendants deny the rest and remainder of Plaintiff's Amended Complaint, except as affirmatively admitted herein.

## FIRST AFFIRMATIVE DEFENSE

49.   Plaintiff has not stated a claim for relief with regard to a "negligent misrepresentation."

## SECOND AFFIRMATIVE DEFENSE

50.  Plaintiff has not stated a claim for relief with regard to a "unilateral mistake".

## THIRD AFFIRMATIVE DEFENSE

51.    Plaintiff is estopped to claim that the potential requirement for a conditional use permit at the Killingsworth Facility constituted a breach of warranty or representation; prior to the Plaintiff's purchase of some of the Defendants' business assets pursuant to the Agreement,

PAGE 13 - DEFENDANTS'  ANSWER TO PLAINTIFF'S FIRST AMENDED COMPLAINT AND COUNTERCLAIMS

David R. Nepom
Attorney at Law
OSB 80-467
20495 S. Sweetbriar Rd.
West Linn, OR  97068
Email:  Dnepom@gmail.com
Tel (503) 223-1137    Fax (503) 223-3511

plaintiff knew that it would be required to obtain its own CBES permit.  Included in the

Defendant's annual inspection forms (which were provided by Defendants to Plaintiff prior to the

purchase of the business assets) for the CBES permit, was the written provision from the City of

Portland inspector detailing the Compliance History for the site, and reflecting how initially

septage and grease trap waste was accepted at the facility in 2010, but that acceptance of that

waste was stopped in 2011, and that Defendant WTS agreed not to treat waste on site, and that

no solid waste would be generated on site.  The annual report also stated as a note that "since this

is considered a waste related activity WTS should have gone through a Land Use Review before

it began operating at the NE Killingsworth site."  Defendants believed that this reference to the

Land Use Review requirement was due to the processing of solid waste which had occurred in

2010 and early 2011; Defendants did not believe, and do not believe, it applied to simply

discharging water pursuant to the CBES wastewater discharge permit.  The City of Portland

continually permitted Defendants to continue its wastewater discharge activities, and renewed

the permit without referencing any further requirements in 2015, and then subsequently granted

Plaintiff a similar permit after Plaintiff's purchase of business assets pursuant to the Agreement.

52.  Plaintiff is purportedly an expert in the field of waste management, and had

full knowledge that Defendants were allowed by the City to continue to use the wastewater

discharge activities at the Killingsworth site under its CBES permit, and the City of Portland

confirmed that right by granting Plaintiff a permit for the site without requiring any Land Use

Review.

## FOURTH AFFIRMATIVE DEFENSE

53.  Defendant realleges and incorporates by reference paragraphs 51 and 52.

PAGE 14 - DEFENDANTS'  ANSWER TO PLAINTIFF'S FIRST AMENDED COMPLAINT
AND COUNTERCLAIMS

David R. Nepom
Attorney at Law
OSB 80-467
20495 S. Sweetbriar Rd.
West Linn, OR  97068
Email:  Dnepom@gmail.com
Tel (503) 223-1137    Fax (503) 223-3511

54.   Any changes to the City of Portland's policies to require a Land Use Review of Plaintiff's activities at Killingsworth were the result of either changes in City policies which took place after the sale or as a result of a change in circumstances occurring after the sale of the business assets to Plaintiff.  Defendant has no responsibility for changes occurring after the sale of the business assets to Plaintiff occurred pursuant to the Agreement.  If the need for land use approval was the  result of changes in the operations planned or proposed by Plaintiff at the facility after the purchase, possibly including the equipment changes made by Plaintiff after the purchase, or by modifying the types of waste accepted at the facility, Plaintiff has sole responsibility for any consequences of such change; alternatively, if the requirement for land use approval was due to changes in City policy, including stricter scrutiny of CBES permits, implemented as a result of the review of Plaintiff's operations after the Plaintiff's purchase, either due to the passage of time or as a result of changes in Plaintiff's equipment and operations at the Killingsworth Facility, Plaintiff has sole responsibility for any consequences of such change. While the extent of the changes made by Plaintiff to the Killingsworth facility after the 1/7/17 Agreement are unknown, it is known that the City of Portland Code Compliance and Zoning commenced an enforcement activity at the Killingsworth facility in August, 2017, when Plaintiff was in control of the Killingsworth Facility, when there was a complaint received of very strong overpowering odors at the site, and apparent septic smells from the site; after 2011 until the sale of the assets from Defendant to Plaintiff, Defendants did not accept septic waste for either processing or disposal at the Killingsworth Facility, and Defendants, without the acceptance of septage waste and without processing solid waste and since Defendants did not generate residual solid waste at the site after 2011, the overpowering odor and septic smells in 2017 establish that

PAGE 15 - DEFENDANTS'  ANSWER TO PLAINTIFF'S FIRST AMENDED COMPLAINT AND COUNTERCLAIMS

David R. Nepom
Attorney at Law
OSB 80-467
20495 S. Sweetbriar Rd.
West Linn, OR  97068
Email:  Dnepom@gmail.com
Tel (503) 223-1137    Fax (503) 223-3511

Plaintiffs changed the operations at the Killingsworth facility after January, 2017, causing the problems with CBES and causing the City to require land use approval of Plaintiff's revised operations.   The problems at the Killingsworth Facility were the result of changes in operation implemented by Plaintiff after the Plaintiff's purchase of some of the Defendant's assets (or a change in City policies implemented after Plaintiff begun operations at the facility).

.                          FIFTH AFFIRMATIVE DEFENSE

55.   Plaintiff made changes to the Killingsworth site without obtaining all necessary permits for such changes, thereby making changes without going through zoning and permit review.  Plaintiff changed the equipment at the Killingsworth site and made structural changes to the building at Killingsworth without structural permits (including permits to enlarge the opening to the building to accommodate the new equipment), and by failing to seek permits prior to the commencement of said work subjected themselves to having implemented changes without first determining what additional zoning and other considerations might be needed to accomplish the changes to the site they were conducting to permit the proposed revised operations at the facility.  Damages claimed by Plaintiff related to the problems with the Killingsworth site are the result of Plaintiff's own improper actions, and Plaintiff is estopped to claiming a breach of Defendants' warranties and representations where Plaintiff's actions have caused its problems with the City.

SIXTH AFFIRMATIVE DEFENSE

56.  Plaintiff's claim for rescission is barred by laches.

SEVENTH AFFIRMATIVE DEFENSE

57.  Defendants never represented that the Killingsworth Facility was a

PAGE 16 - DEFENDANTS'  ANSWER TO PLAINTIFF'S FIRST AMENDED COMPLAINT AND COUNTERCLAIMS

David R. Nepom
Attorney at Law
OSB 80-467
20495 S. Sweetbriar Rd.
West Linn, OR  97068
Email:  Dnepom@gmail.com
Tel (503) 223-1137    Fax (503) 223-3511

"Wastewater Treatment Facility"; the permit provided by Defendants to Plaintiff was a "Wastewater Discharge Permit" and did not cover wastewater treatment or solid waste treatment at the Killingsworth facility, and Plaintiffs knew that when Defendants operating the business, wastewater pretreatment occurred at the Clutter Facility, and Plaintiffs knew or should have known that the Clutter Facility's wastewater pretreatment operations were inspected by the CBES annually as part of the CBES wastewater discharge permit inspections.   Defendants knew or should have known that the annual inspections reports documented that Defendant had agreed since 2011 not to treat waste or create residual solid waste onsite at the Killingsworth facility.

EIGHTH AFFIRMATIVE DEFENSE

58.   Defendants deny that they processed the street sweeping waste at the Clutter facility; such processing as subsequently begun by Plaintiff  (dividing the waste into organic and inorganic piles, and then subsequently letting said piles accumulate at the Clutter facility) were not the sort of use of the facility that Defendants had conducted.  Defendants had reloaded the waste from the street sweeping debris for processing or disposal at other locations, and no reload permit was required for such operations.  Plaintiff also had no issue with the DEQ for a period of time following Plaintiff's purchase of the business, at which time Plaintiff also reloaded the street sweeping debris for processing or disposal at other locations.

59.   Once Plaintiff began processing the street sweeping debris at the Clutter property and storing the waste into giant mounds at the Clutter Facility Plaintiff needed a new permit for such activities, including a solid waste and/or transfer station permit.

60.   The mounds of material that had been sorted by Plaintiff also began decomposing or composting, causing bad smells and neighbor complaints.

PAGE 17 - DEFENDANTS'  ANSWER TO PLAINTIFF'S FIRST AMENDED COMPLAINT AND COUNTERCLAIMS

David R. Nepom
Attorney at Law
OSB 80-467
20495 S. Sweetbriar Rd.
West Linn, OR  97068
Email:  Dnepom@gmail.com
Tel (503) 223-1137    Fax (503) 223-3511

61.  Plaintiff's problems with the Clutter Facility were the result of Plaintiff electing to change the operations at Clutter, which Plaintiff did at its own risk. (Apparently done by Plaintiff in an effort to "save money."

### NINTH AFFIRMATIVE DEFENSE

62.  Defendants re allege and incorporate by reference paragraphs 58 through 61.

63.  The change of operations was also done without the consent of the landlord to the Clutter Property, Defendant Jonas (pursuant to the lease of the Clutter property executed contemporaneously with the Sales Agreement),  and violated Section V.1 and V.2 and V.3 of the lease, where Plaintiff, as lessee, agreed that it was Lessee's sole responsibility to determine and comply with all applicable zoning ordinances or other ordinances, regulations, requirements, stipulations and conditions imposed by governmental authorities affecting the use or occupancy of the Leased Premises (Paragraph V.1), and that Plaintiff, as lessee, would not use or occupy the premises or keep materials on the premises which violate any law or requirement of public authorities (including anything that would constitute waste or a public or private nuisance) and that Lessee, at Lessee's sole cost and expense would comply with and faithfully observe in all material respects all written laws, statutes, ordinances, rules, regulations, and requirements of all county, municipal, state, federal or other applicable governmental agencies.

64.  Plaintiff has the contractual obligation to pay any damages suffered as a result of any problems or expense associated with its operations at the Clutter Facility in violation of the lease provisions.

### TENTH AFFIRMATIVE DEFENSE

65.  Defendant realleges and incorporates by reference paragraphs 62 and 63.

PAGE 18 - DEFENDANTS'  ANSWER TO PLAINTIFF'S FIRST AMENDED COMPLAINT AND COUNTERCLAIMS

David R. Nepom
Attorney at Law
OSB 80-467
20495 S. Sweetbriar Rd.
West Linn, OR  97068
Email:  Dnepom@gmail.com
Tel (503) 223-1137    Fax (503) 223-3511

66.  Plaintiff specifically acknowledged and agreed that Defendant Jonas had not made any representation or warranty with respect to the condition of the leased premises at the Clutter Facility and that Defendant Jonas had made no representation or warranty with respect to the suitability or fitness of the Clutter Facility for the conduct of Lessee's permitted use or for any other purpose.  Plaintiff, as lessee, specifically agreed that it inspected the premises and accepted the condition of the premises in their present state (Section V.4, Clutter Facility lease).

67.  Plaintiff assumed responsibility for any requirement of any compliance with regulatory or legal requirements for any and all changes made in the activities at the Clutter Facility, and for any new legal requirements that might be imposed on the facility.

## ELEVENTH AFFIRMATIVE DEFENSE

68.  Any  damages claimed by Plaintiff were actually the result of Plaintiff's change of operations which occurred following closing; Plaintiff could have continued operating in the manner in which the Clutter and Killingsworth facilities were operated without problems from the DEQ or CBES, but the changes implemented by Plaintiff after closing triggered problems with the regulatory authorities.

69.  Plaintiff either intentionally or recklessly changed its operations causing problems with the CBES wastewater discharge operations at the Killingsworth Facility, and/or the Clutter Facility and causing problems with the DEQ such that a transfer station or solid waste permit and/or land use approvals would be required for the facility or facilities, thereby assuming the risk of the consequences of the changes in the operations at one or both of said facilities.

## TWELFTH AFFIRMATIVE DEFENSE

70.  Plaintiff did not rely upon any representations or warranties of the

PAGE 19 - DEFENDANTS'  ANSWER TO PLAINTIFF'S FIRST AMENDED COMPLAINT
AND COUNTERCLAIMS

David R. Nepom
Attorney at Law
OSB 80-467
20495 S. Sweetbriar Rd.
West Linn, OR  97068
Email:  Dnepom@gmail.com
Tel (503) 223-1137    Fax (503) 223-3511

Defendants in determining what operations could be legally conducted at the Killingsworth Facility or the Clutter Facility. Plaintiff did its own examination of the facilities and the legal requirements for operating at such locations, and plaintiff purportedly was and is an expert at waste management and the requirements of waste management operations, and relied upon its own investigation and inspections conducted prior to purchasing the business assets of Defendants under the Agreement.

## THIRTEENTH AFFIRMATIVE DEFENSE

71. To the extent any representation or warranty may be deemed to include any misstatement or error, such misstatement or error was not material, and is not the cause of Plaintiff's damage nor the cause of their problems with CBES with regard to the Killingsworth Facility  nor the DEQ with regard to the Clutter Facility, nor to the other matters claimed in Plaintiff's Amended Complaints. The issues Plaintiff complains about are the result of Plaintiff's voluntary decision(s) to change the operations at the facilities months after the Plaintiff completed the purchase of some of Defendant's business assets pursuant to the Agreement and entering into the Clutter Lease.

## FOURTEENTH AFFIRMATIVE DEFENSE

72. Defendant acknowledges that some written notice of rise to an obligation of indemnification was given with regard to a limited claim related to the Killingsworth facility by email to Defendant's counsel on June 7, 2018 prior to 18 months after the closing date, but to Defendant's knowledge and belief, such notice was not sent pursuant to the required notice provisions of the Agreement.  Plaintiff had an obligation to provide written notice, sent in accordance with the agreement to all parties identified in the Agreement as persons to whom

PAGE 20 - DEFENDANTS'  ANSWER TO PLAINTIFF'S FIRST AMENDED COMPLAINT AND COUNTERCLAIMS

David R. Nepom
Attorney at Law
OSB 80-467
20495 S. Sweetbriar Rd.
West Linn, OR  97068
Email:  Dnepom@gmail.com
Tel (503) 223-1137    Fax (503) 223-3511

notices were to have been sent, prior to 18 months after the closing date as provided for in Section 6.1 of the Agreement, otherwise such claims are barred by said provisions, and Plaintiff's claims and any future claims for breach of representations and warranties are barred by said Agreement and said section.   To Defendants' knowledge and recollection, no notice related to the issues at the Clutter facility was sent in any manner prior to the 18 month limitation period provided for in Section 6.1 of the Agreement.

### THIRTEENTH AFFIRMATIVE DEFENSE

73.  Plaintiffs claims are limited under Section 6.4 of the Agreement, depending on the amount, if any, that it is determined Defendant may owe on account of indemnification agreement.

### FIRST COUNTERCLAIM

74.  Plaintiff owed and still owes Defendant WTS  the "Holdback Amount"of $350,000, which was due the next business day after 18 months after the anniversary of the closing date.  The next business day after 18 months after the anniversay of the closing date was July 9, 2018.

75.  Defendants have performed all conditions precedent on their part to be performed under the contract.

76.  Defendant WTS is entitled to the sum of $350,000, plus interest at 9% from July 9, 2018.

77.  Defendant WTS are entitled to attorney fees for obtaining the recovery of the funds due under the contract.

PAGE 21 - DEFENDANTS'  ANSWER TO PLAINTIFF'S FIRST AMENDED COMPLAINT AND COUNTERCLAIMS

David R. Nepom
Attorney at Law
OSB 80-467
20495 S. Sweetbriar Rd.
West Linn, OR  97068
Email:  Dnepom@gmail.com
Tel (503) 223-1137    Fax (503) 223-3511

SECOND COUNTERCLAIM

78.  Defendants, and each of them, are entitled to attorney fees in defending the claims brought by Plaintiff.

79.  Defendant Jonas is entitled to attorney fees in pursuing claims under the lease between Jonas as Lessor and Plaintiff as Lessee.

THIRD COUNTERCLAIM

80.  Defendants are owed additional funds for services and equipment provided at Plaintiff's instance and request following the closing of the transaction, including the following:

A.  For a time beginning after the closing date of the Agreement, and ending a number of months thereafter, Plaintiff transported street sweeping debris to another facility operated by Ecology Composting, Inc., an entity owned by Defendant Bob Jonas, located in Dayton, Oregon, for the purpose of processing and disposing of the street sweeping debris accumulated by Plaintiff as part of its street sweeping operations.  Plaintiff has failed to pay the billed charged (which are equal to the reasonable disposal charges) for the acceptance of such street sweeping debris, in the sum of $21,000.  Said sum is currently due and has been assigned or will be assigned to Defendant Jonas.

b.  For a time beginning after the closing date of the Agreement, and ending a number of months thereafter, Plaintiff requested that Defendant, through Affordable Equipment Sales and Rentals, Inc.,  an entity owned by Defendant Bob Jonas provide for Plaintiff's use certain equipment.  Affordable Equipment, provided, at Plaintiff's instance and request, a 40' S&T  Walking Floor Trailer, a 325 Cat Excavator, a W42 KW Stainless Steel Water Truck, a 2005 Transcraft Step Deck Trailer, a Pete Drop Box Truck (Chain), and approximately 20 drop

PAGE 22 - DEFENDANTS'  ANSWER TO PLAINTIFF'S FIRST AMENDED COMPLAINT AND COUNTERCLAIMS

David R. Nepom
Attorney at Law
OSB 80-467
20495 S. Sweetbriar Rd.
West Linn, OR  97068
Email:  Dnepom@gmail.com
Tel (503) 223-1137    Fax (503) 223-3511

boxes and chain boxes.  Plaintiff has failed to pay the billed charged (which are equal to the reasonable disposal charges) for sad equipment ($1,200 per month for the Walking Floor Trailer, $4,000 per month for the Cat Excavator, $5,500 for the stainless water truck, $600 per month for teh step deck trailer,  and $3,100 for the Pete drop box truck (chain), plus chain boxes rented with a rental value of $3,500  Plaintiff did not object to the statements of the sum due, and the rental sums for the equipment used by Plaintiff is now due and owing (whether as an "account stated", a set rental amount, or the reasonable rental value of equipment provided at Plaintiff's instance and request).  The sums due exceeds the sum of $84,500 (for the period for which Plaintiff has not made payment), but which can be resolved, subject to other matters also being resolved, for the sum of $84,500.  Said sum is currently due and has been assigned or will be assigned to Defendant Jonas.

c.  Plaintiff owes Defendant Jonas the sum of $3,980.83 on account of the 2017-2018 property taxes due from Plaintiff under the lease, which sum has not yet been paid.

d. Plaintiff owes Defendant for Plaintiff's use of potable water through November 30, 2017 under the Agreement in the sum of $10,950, and all water sold to customers after that November 30, 2017 date (as opposed to water used in, for example, Plaintiff's street sweepers) from Defendant Jonas' well is to be paid for at the rate of $10.00 per 1,000 gallons; Plaintiff has a duty to provide documentation of sales of water and remit the appropriate amounts to Defendant Jonas quarterly.

e.  Plaintiff utilized a portion of the Defendant's property specifically not included in the Plaintiff's lease, which Plaintiff advised would result in additional rental charges.  The reasonable rental rates for such additional land utilized by Plaintiff was the sum of $4,000 per

PAGE 23 - DEFENDANTS'  ANSWER TO PLAINTIFF'S FIRST AMENDED COMPLAINT AND COUNTERCLAIMS

David R. Nepom
Attorney at Law
OSB 80-467
20495 S. Sweetbriar Rd.
West Linn, OR  97068
Email:  Dnepom@gmail.com
Tel (503) 223-1137    Fax (503) 223-3511

month, which was utilized by Plaintiff for over a year following the sale.

   f.  Plaintiff collected Defendant's accounts receivable after closing of the sale and execution of the Agreement.  Plaintiff has failed to keep adequate records to document what sums have been received by plaintiff on account of Defendant's account receivables which were paid to plaintiff or paid to an account for the benefit of the Plaintiff following closing.  Plaintiff needs to account for the sums received, and give Defendant credit for such sums which Plaintiff received which rightfully should have been credited for the benefit of the Defendant WTS. These include the sums paid as holdback amounts from Defendant's customer Slayden Sundt JV and sums refunded for overpayments made by Defendant WTS prior to sale, refunded and deposited in an account for the benefit of Plaintiff after the sale.   Said funds rightfully should be credited for the benefit of Defendant, but Plaintiff has failed to do so, and failed to disburse such funds it received for Defendant's benefit to Defendant.

## OTHER MATTERS

   91. Defendants reserves the right to supplement and/or amend this Answer and the counterclaims, with the Court's leave, as more information becomes available.

## PRAYER

   Wherefore, Defendants pray that Plaintiff's claims be dismissed, and that Defendants, and each of them, as to each of their (separate) claims as described above, obtain a judgment against Plaintiff as follows:

   1.  For the sum of $350,000 on account of the unpaid holdback amount due under the Agreement, plus interest;

   2.  For such other sums as described in the Counterclaims for moneys due for

PAGE 24 - DEFENDANTS'  ANSWER TO PLAINTIFF'S FIRST AMENDED COMPLAINT AND COUNTERCLAIMS

David R. Nepom
Attorney at Law
OSB 80-467
20495 S. Sweetbriar Rd.
West Linn, OR  97068
Email:  Dnepom@gmail.com
Tel (503) 223-1137    Fax (503) 223-3511

equipment and additional real property rental and for water obtained from Defendant Jonas and sold to Plaintiff's customers, services (receipt of Plaintiff's waste at the Dayton facility) for money received by Plaintiff due to Defendant (Defendant's account receivables and other funds received or benefiting Plaintiff rightfully belonging to Defendant) and other sums under the Counterclaims described above.

3.  For Defendant's attorney fees and costs, for defending the matters raised under Plaintiff's claims and for Defendant's claims under the Agreement and under the Clutter Lease, including those incurred at trial, on appeal and in enforcing any judgment;

4.  Such other and further relief as the Court deems just and proper.

DATED this 17th day of September, 2019.

Respectfully submitted,

*/s/ David R. Nepom*
David R. Nepom, OSB #80467
Attorney for Defendants
Email: dnepom@gmail .com

PAGE 25 - DEFENDANTS'  ANSWER TO PLAINTIFF'S FIRST AMENDED COMPLAINT AND COUNTERCLAIMS

David R. Nepom
Attorney at Law
OSB 80-467
20495 S. Sweetbriar Rd.
West Linn, OR  97068
Email:  Dnepom@gmail.com
Tel (503) 223-1137    Fax (503) 223-3511

## **ATTORNEY CERTIFICATE OF SERVICE**

I hereby certify that on September 17, 2019, I made service of the foregoing

**DEFENDANTS' ANSWER AND COUNTERCLAIMS**  on the parties listed below in the

manner indicated:

Brian Kiolbasa
email:
**Kiolbasa, Brian** <KiolbasaB@lanepowell.com>

and Michael R. Phillips
email:
mike.phillips@keanmiller.com


Attorneys for Plaintiff



___X__            by emailing a copy thereof to said attorney and/or party's last known email
address on the date set forth above.


DATED this _17th__ day of September, 2019.



/s/ David R. Nepom_____
David R. Nepom, OSB #80467
Attorney for Defendants

David R. Nepom
Attorney at Law
OSB 80-467
20495 S. Sweetbriar Rd.
West Linn, OR  97068
Email:  Dnepom@gmail.com
Tel (503) 223-1137    Fax (503) 223-3511